The Honorable Carol Billings City Attorney 200 East Eighth Avenue Pine Bluff, Arkansas 71601
Dear Ms. Billings:
This is in response to your request, pursuant to A.C.A. §25-19-105(c)(3)(B), for an opinion on whether pension records of two former mayors of the City of Pine Bluff are subject to inspection and copying under the Arkansas Freedom of Information Act (FOIA), codified at A.C.A. §§ 25-19-101 — 107 (as amended by Acts 540, 873, and 1335 of 1997). It is my understanding that the City of Pine Bluff operates a self-funded local retirement program. It is also my understanding that a local newspaper has requested the lump sum amount that a former mayor received in retirement benefits, the amount that she paid into the system, the amount of benefits that she would have received under a "separate state system,"[1] and the amount of benefits that another former mayor is receiving. With regard to these requests, you present the following questions:
1. Are these personnel records and may we release them?
2. Are they subject to disclosure?
3. Would these be covered under A.C.A. § 24-3-213?
It is my opinion that records concerning a former mayor's contributions to his or her pension system, as well as the amount of benefits the former mayor receives, are public records and should be open to public inspection under the FOIA.[2]
Initially, it is my opinion that A.C.A. § 24-3-213 is not applicable to retirement records maintained by a municipal retirement program. Arkansas Code Annotated § 24-3-213 provides:
 Any and all records kept by an Arkansas public retirement system, whether required to be kept by law or board policy, shall be open to public inspection as provided in 25-19-105, except that individual members' records which are kept for the purpose of compiling information for the members' retirement or social security records shall not be open to the public.
(Emphasis supplied.) Section 24-3-213 was enacted as part of Act 793 of 1977. Section 1 of Act 793 provided in part that the purpose of the act was to establish minimum financing, accounting, and reporting standards for "named public employee retirement plans in Arkansas." Section 2 of the act defined "named plan" as any retirement plan covering Arkansas public employees and named in section 3.01. Section 3.01 provided that the benefit provisions of Act 793 were applicable to specified members of the following Arkansas public employee retirement plans: Arkansas Public Employees Retirement System and Arkansas State Police Retirement System.[3] Accordingly, it is my opinion that the General Assembly did not intend for a municipal retirement program to be included within the meaning of the term "Arkansas public retirement system." See also John Watkins, Arkansas Freedom ofInformation Act 211-212 n. 365 (2d ed. 1994).
It is also my opinion that records concerning an individual's contributions to his or her pension system, as well as the amount of benefits an individual receives, constitute personnel records.[4] The FOIA does not define the phrase "personnel records," nor has the term been defined judicially. Nevertheless, I have previously opined, as has my predecessor, that comparable information such as personal financial information, payroll deductions, and employee benefit information constitute personnel records. See Ops. Att'y Gen. 97-189, 96-275, 94-235, 94-198 and87-442. It should also be noted that records need not be found in an individuals personnel file in order to be considered "personnel records." See Op. Att'y Gen. 96-275; John Watkins, ArkansasFreedom of Information Act 125-126 (2d ed. 1994).
Under the FOIA, personnel records are exempt from disclosure only to the extent that their disclosure would constitute a "clearly unwarranted invasion of personal privacy." A.C.A. §25-19-105(b)(10). In determining what information, if released, would constitute a "clearly unwarranted invasion of personal privacy," the Arkansas Supreme Court has adopted a balancing test. The court stated in Young v. Rice, 308 Ark. 593, 826 S.W.2d 252
(1992), that:
 The fact that section 25-19-105(b)(10) exempts disclosure of personnel records only when a clearly unwarranted personal privacy invasion would result, indicates that certain "warranted" privacy invasions will be tolerated. Thus, section 25-19-105(b)(10) requires that the public's right to knowledge of the records be weighed against an individual's right to privacy. . . . Because section 25-19-105(b)(10) allows warranted invasions of privacy, it follows that when the public's interest is substantial, it will usually outweigh any individual privacy interest and disclosure will be favored.
308 Ark. at 598.
In Young, the court upheld the denial of access to the names of police officers participating in the lieutenant promotion examination proceedings, but allowed release of the records of the examination with the names deleted. The court relied upon federal case law which finds a substantial privacy interest in records relating the intimate details of a person's life, including any information that might subject the person to embarrassment, harassment, disgrace, or loss of employment or friends. The court found that some of the actions of the police officers when taking the role-playing portion of the examination were "embarrassing behaviors" touching on intimate details of the candidate's lives, and the release of the information could subject them to embarrassment and perhaps threaten future employment. The court therefore found a substantial privacy interest in the records. The court also found a substantial public interest in the records, but concluded that the public's interest was satisfied by the release of the examination records with the candidate's names deleted.
Other federal case law, like that relied upon in Young, delineates other types of information, the release of which might constitute a "clearly unwarranted invasion of personal privacy." The following specific information has been exempted from public disclosure through judicial interpretation: personal histories; religious affiliations of employees, Church of Scientology v.Department of Defense, 611 F.2d 738 (9th Cir. 1979); citizenship,United States Department of State v. Washington Post Co.,456 U.S. 595 (1982); marital status, Simpson v. Vance, 648 F.2d 10
(D.C. Cir. 1980); social security numbers, Swisher v. Departmentof the Air Force, 660 F.2d 369 (5th Cir. 1981); information about family life, Providence Journal Co. v. F.B.I., 460 F. Supp. 778,reversed on distinct grounds, 602 F.2d 1010 (1st Cir. 1979); information regarding welfare payments, legitimacy of children, family rights, and alcohol consumption, Rural Housing Alliance v.Department of Agriculture, 498 F.2d 73 (D.C. Cir. 1974).
In contrast, courts have found relatively little privacy interest in records revealing names, date and place of birth, salaries of public employees, training or education background, and work experience. Kruzon v. Department of Health Human Services,649 F.2d 65 (1st Cir. 1981) and Simpson v. Vance, supra.
Consistent with the precepts set forth above, it is my opinion that records concerning a former mayor's contributions to his or her local pension system, as well as the amount of benefits a former mayor receives, are subject to inspection and copying because the release of such records would most likely not give rise to a "clearly unwarranted invasion of personal privacy." SeeHamer v. Lentz, 171 Ill. App.3d 888 (1988), aff'd in part, rev'din part 132 Ill.2d 49 (1989) (annual pension received by each former member of Illinois General Assembly is subject to the disclosure provisions of the FOIA); but see Op. Att'y Gen. Hawaii 90-1 (issued January 8, 1990) (disclosure of specific data concerning a retired public employee's pension benefit income or payout option selected would constitute a clearly unwarranted invasion of personal privacy[5]); Op. Att'y Gen. New Hampshire 97-2 (issued May 8, 1997). Granted, in Opinion 87-442, my predecessor opined that the release of financial information such as payroll deductions, credit union statements, insurance coverage, and "similar records" would divulge intimate financial details. See also Op. Att'y Gen. 94-235 (decision to excise "benefit information" from personnel file would, in general, be consistent with the FOIA); Op. Att'y Gen. 97-189. The individual's right to privacy, however, must be weighed against the public's right to knowledge of the particular records.
In balancing the privacy interest in non-disclosure against the public interest in release of the records, it is my opinion that the public's interest in the instant records is substantial. The public has a substantial interest in the expenditure of public funds. This public interest is heightened with regard to a formermayor's pension. The mayor is generally regarded as an "executive" officer (see, e.g., A.C.A. § 14-43-504(a), regarding mayor as "chief executive officer"), and he or she also serves as "ex officio president of the council" and presides at its meetings (see A.C.A. §§ 14-43-501(b)(1)(A) and 14-44-107(a)). Op. Att'y Gen. 97-041. In addition, although the public interest in how the taxpayers' dollars are generally being spent can be served in part by the disclosure of aggregate data on benefits paid to retired public employees, such aggregate information cannot be used to determine whether a former employee's pension was properly calculated. Thus, the disclosure of the records in question, including the amount a person has contributed to the pension fund, will directly inform the public regarding the expenditure of public funds and whether the pensions of the two former mayor's were properly calculated.
Although an individual does have a privacy interest with regard to the details of his or her personal finances, section25-19-105(b)(10) exempts disclosure of personnel records only when a clearly unwarranted personal privacy invasion would result. Thus, it is clearly indicated that certain "warranted" privacy invasions will be tolerated. The Arkansas Supreme Court has stated that when the public's interest in records is substantial, it will usually outweigh any individual privacy interest and disclosure will be favored. See Young, supra. In short, because disclosure will be favored in close cases, I must conclude that the public's interest in the instant case tips the balance in favor of disclosure.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Warren T. Readnour.
Sincerely,
WINSTON BRYANT Attorney General
WB:WTR/cyh
[1] It is my understanding that you are referring to the retirement plan provided by A.C.A. § 24-12-123.
[2] With regard to the amount of benefits that the mayor "would have received" under a separate state system, it is unclear whether such records actually exist. A public agency is not required to create or acquire records in response to an FOIA request. See Op. Att'y Gen. 93-403.
[3] The "benefit provisions" have been extended to additional employees, A.C.A. § 24-3-214; however, a person receiving retirement benefits from a municipal retirement system is not considered a member.
[4] This office's obligation to provide an opinion to the requester, custodian, or subject of the records arises only with regard to personnel or evaluation records.
[5] The Attorney General for the State of Hawaii recognized that under certain circumstances, such as where specific allegations of fraud are present, the public interest in disclosure may outweigh an individual's privacy interest.