(No. 67401.—

BRIAN A. HAMER, Appellee, v. NORMAN E. LENTZ *et al.*, Appellants.

*Opinion filed October 25, 1989.—Rehearing denied December 4, 1989.*

50

MORAN, C.J., took no part.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Karen Michels Caille, Assistant Attorney General, of Chicago, of counsel), for appellants.

Brian A. Hamer, *pro se*, and Herbert L. Zarov, of Mayer, Brown & Platt, of Chicago, for appellee.

James C. Craven and Donald M. Craven, of Springfield, for *amici curiae* Attorneys for Illinois Press Association and Illinois Newsbroadcasters Association.

Barry A. Miller and Malcolm C. Rich, of Chicago, for *amicus curiae* Chicago Council of Lawyers.

JUSTICE STAMOS delivered the opinion of the court:

Plaintiff brought this action in the circuit court of Cook County for injunctive and declaratory relief pursuant to the Illinois Freedom of Information Act (FOIA) (Ill. Rev. Stat. 1987, ch. 116, par. 201 *et seq.*) against Norman E. Lentz, administrative secretary of the General Assembly Retirement System (GARS), and the board of trustees of GARS. In his complaint, plaintiff sought an order directing defendants to make available to plaintiff certain public records in the possession of GARS, and an award of attorney fees and costs. The trial court ordered defendants to disclose some but not all of the requested information, and denied plaintiff's petition for attorney fees.

The appellate court affirmed in part, reversed in part and remanded, ruling (1) that the FOIA requires all of the records requested by plaintiff to be disclosed, and (2) that plaintiff is entitled to an award of fees. The appellate court remanded the cause for a hearing on the rea-

sonableness of the amount of fees requested. 171 Ill. App. 3d 888.

We allowed defendants' petition for leave to appeal pursuant to Supreme Court Rule 315 (107 Ill. 2d R. 315). Defendants raise the following issues: (1) whether plaintiff's status as an attorney proceeding *pro se* precludes an award of attorney fees under the FOIA; (2) whether the appellate court applied the appropriate standard of review in reversing the trial court's denial of attorney fees; and (3) whether the appellate court erred in ordering defendants to release to plaintiff all of the requested information.

We granted leave to the Illinois Press Association, the Illinois NewsBroadcasters Association, and the Chicago Council of Lawyers to file *amicus curiae* briefs. *Amici* urge us to affirm the judgment of the appellate court.

## FACTS

The facts giving rise to this appeal, which are not in dispute, are fully set forth in the appellate court's opinion and need not be repeated at length here. Briefly, on September 19, 1984, plaintiff, Brian A. Hamer, an attorney, submitted a written request for certain records to defendant Norman E. Lentz, the administrative secretary of the General Assembly Retirement System (GARS). The information sought concerns State pension payments received by former members of the Illinois General Assembly. The two categories of information that remain in dispute are the following: (1) the length of service in the General Assembly of all former members of the General Assembly who are currently receiving pension payments under GARS; and (2) the cumulative pension received by each former member from the date of retirement to the most recent practicable date.

Over the next 11 months, the parties exchanged correspondence, but the records requested by plaintiff were

not released. On August 15, 1985, plaintiff filed this action seeking an injunction ordering defendants to make available the requested records, a declaration that their continuing failure to do so constituted a violation of the FOIA, and an award of attorney fees and costs. In their answer to the complaint, defendants asserted as affirmative defenses (1) that they denied the request in the good-faith belief that, as trustees of the pension funds, they had a fiduciary duty to the beneficiaries not to disclose confidential financial information, and (2) that the information was exempt from disclosure under the FOIA because the information, if disclosed, "would constitute a clearly unwarranted invasion of personal privacy." Ill. Rev. Stat. 1987, ch. 116, par. 207(b)(ii).

The trial court granted plaintiff's motion for summary judgment, ruling that the information requested was not exempt from disclosure under the FOIA. The court also ruled that the defendants were only obligated to produce records maintained by them in the ordinary course of business. The trial court subsequently held a hearing, during which defendants explained the record-keeping system of GARS. Following the hearing, the trial court entered an order directing defendants to produce some, but not all, of the information plaintiff had requested; the trial court did not expressly state the basis for its ruling. In a later proceeding, the trial court denied plaintiff's petition for attorney fees brought under the FOIA.

Plaintiff appealed, contending that the trial court erred in failing to order defendants to provide records showing the cumulative pension of each retiree and the lengths of service upon which those pensions are based. Plaintiff also appealed from the denial of his petition for attorney fees. The appellate court affirmed in part, reversed in part, and remanded, ruling in favor of plaintiff on both the merits and on the attorney fees issue.

## DISPUTED DOCUMENTS

The information that remains in dispute is the cumulative pension of each former member of the General Assembly and the length of service of each former member. Defendants do not dispute that their records contain this information. Nor do they contend in this court that the records fall within any of the statutory exemptions set out in section 7 of the FOIA (Ill. Rev. Stat. 1987, ch. 116, par. 207). Their sole contention in resisting disclosure is that "the appellate court erroneously concluded that the trial court did not release [this material] to plaintiff because [the material] contained information which was exempt from disclosure." Defendants maintain that the trial court properly declined to order disclosure of the disputed records "since that information would require defendants to go through two different types of ledgers for each former member and create a new document." See Ill. Rev. Stat. 1987, ch. 116, par. 201 (no duty is imposed on a public body to create a new record in order to comply with a FOIA request).

Before turning to an examination of the records in dispute, we note, first, that the trial court never made the finding the defendants claim the court made. Second, the defendants' position seems to be that if information is located in two different places, producing that information involves the creation of a new record. Such a position is supported neither by legal authority nor by logic.

We conclude that the appellate court correctly ruled that defendants must disclose all of the requested information.

In the trial court, in response to the court's order to make a presentation to the court indicating the manner in which records are maintained by GARS, the defendants, on February 26, 1986, filed a memorandum (Febru-

ary memorandum). The February memorandum states that an annuitant ledger sheet maintained by defendants for each retired member "shows the total benefit received for the fiscal year and the total benefit received"—in other words, the cumulative pension received. A copy of one such ledger sheet was attached to the memorandum as an exhibit. We fail to understand how defendants can resist disclosure of the cumulative pension information. The information is maintained by defendants in the ordinary course of business and it is not exempt from disclosure; accordingly, defendants must release it to plaintiff.

Defendants' contention that the appellate court erroneously relied on section 8 of the FOIA is meritless. (Ill. Rev. Stat. 1987, ch. 116, par. 208 (where a public record contains both exempt and nonexempt material, "the public body shall separate the exempt material and make the non-exempt material available for inspection and copying").) The appellate court correctly noted that the annuitant ledger sheets contain information that is not relevant to plaintiff's request—that is, information that was not requested by plaintiff. The appellate court further noted that some of this unrequested information *may* be exempt from disclosure on privacy grounds. The appellate court correctly ruled that if some of the information on the ledger sheets is not subject to disclosure either because plaintiff did not request it, or because it falls within a statutory exemption, the FOIA provides for such a situation in section 8.

The record is somewhat unclear as to the manner in which the length of service information is maintained. What is clear, however, is that defendants have this information and, as we have noted, defendants do not dispute this. The February memorandum explains that certain GARS information is stored on computer tapes which are operated by and are in the possession of the

State Employees' Retirement System (SERS). Each month, GARS submits data input sheets to SERS. SERS personnel enter the data on computer tapes, and GARS receives a monthly printout from SERS. This printout, according to the memorandum, apparently does not include the length of service information. However, the memorandum states that one of the items of information stored on computer tapes is months of service, but that, according to SERS computer personnel, a single program does not exist to print out such information for all annuitants. In addition, the active-member ledger sheets maintained by GARS show the months of service of each active member of the General Assembly. However, plaintiff requested months of service for each retiree, not each active member.

Neither of the parties, nor the appellate court, addressed the question whether, assuming the information is located only on computer tape, defendants must prepare a computer program which would generate the months of service information onto hard copy. We have previously answered this question in the affirmative. *Family Life League v. Department of Public Aid* (1986), 112 Ill. 2d 449 (in order to provide plaintiff with the requested information, defendant was ordered to develop a special computer program which would delete exempt information); see also *Bowie v. Evanston Community Consolidated School District No. 65* (1989), 128 Ill. 2d 373.

It may be that a special computer program will not be necessary. Since GARS personnel prepare the data input sheets that are submitted to SERS, and the input sheets include months of service, it is apparent that GARS itself has this information somewhere.

In sum, the length of service information is maintained by defendants in the ordinary course of business, is nonexempt, and thus must be disclosed. Disclosure of

the information in no way involves the creation of a new record.

We hold that the records reflecting the cumulative pensions and lengths of service of retirees must be made available to plaintiff for inspection or copying.

## ATTORNEY FEES

Section 11(h) of the FOIA provides as follows:

"If a person seeking the right to inspect or receive a copy of a public record substantially prevails in a proceeding under this Section, the court may award such person reasonable attorneys' fees but only if the court finds that the record or records in question were of clearly significant interest to the general public and that the public body lacked any rational basis in law for withholding the record." Ill. Rev. Stat. 1987, ch. 116, par. 211(h).

Defendants contend, first, that plaintiff is ineligible for an award of fees under this provision because of his status as an attorney proceeding *pro se*. Second, defendants contend that plaintiff is not entitled to fees because defendants had a rational basis in law for withholding the requested records. The appellate court rejected both of these contentions.

### A. Plaintiff's Status as a *Pro Se* Attorney

The plain language of section 11(h) does not preclude an award of fees to a *pro se* attorney. The legislative history of the statute does not address the issue directly. Statements by the FOIA's chief sponsor indicate that the broad purpose of the fee provision is to enforce the statute. Representative Currie stated: "The point of the attorneys' fees Section is really to encourage citizens to act rather like a private attorney general. The concept *** really encourages the public to ... to have the opportunity to make sure that this Bill, freedom of information, can

be enforced." (83d Ill. Gen. Assem., House Proceedings, Oct. 20, 1983, at 44 (statements of Representative Currie).) No Illinois case has addressed the issue presented. In addition, no Illinois case has addressed whether a nonlawyer plaintiff proceeding *pro se* may recover attorney fees.

In the absence of express language on the issue in either the statute itself or its legislative history, we look to the fee provision of the Federal Freedom of Information Act, which provides: "The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. §552(a)(4)(E) (1982).

Four of the circuit courts of appeals have considered the question whether *pro se* attorneys may recover fees under the Federal FOIA; the cases are evenly divided. Compare *Aronson v. United States Department of Housing and Urban Development* (1st Cir. 1989), 866 F.2d 1 (fees denied); *Falcone v. Internal Revenue Service* (6th Cir. 1983), 714 F.2d 646 (same), with *Cazalas v. United States Department of Justice* (5th Cir. 1983), 709 F.2d 1051 (fees granted); *Cuneo v. Rumsfeld* (D.C. Cir. 1977), 553 F.2d 1360 (same).

Initially we note that with the exception of the Court of Appeals for the District of Columbia, all of the circuit courts of appeals that have considered the question have held that a nonlawyer *pro se* litigant is not entitled to fees. (See *Aronson*, 866 F.2d at 4 (collecting cases).) Those circuits that have denied fees to *pro se* lawyers in FOIA cases conclude that there is "no good reason for treating *pro se* lawyers any differently than *pro se* laypersons." (*Aronson*, 866 F.2d at 5; accord *Falcone*, 714 F.2d at 647.) Whether a nonlawyer *pro se* litigant may recover attorney fees under the Illinois FOIA is a ques-

tion that is not before us, and we express no opinion on the matter.

The courts in *Aronson* and *Falcone* reached their conclusions for essentially the same reasons. First, the award of fees is intended to relieve plaintiffs of the burden of legal costs; it is not intended as either a reward for plaintiffs or a penalty against the government. Since a *pro se* lawyer incurs no legal costs, the intent of the fee provision would not be served by granting fees to *pro se* lawyers. Second, the fee provision encourages plaintiffs to seek out legal advice in order to prevent unwarranted litigation. Although a *pro se* lawyer may have the requisite legal skills, he or she may lack the objectivity necessary to meet the aims of the statute. Third, the fee provision might be used by lawyers with an inactive practice solely to generate fees. *Aronson*, 866 F.2d at 4, citing *Falcone*, 714 F.2d at 647-48.

The court in *Aronson* also addressed the rationales given by those courts that have reached the opposite result. First, the court did not agree that the purpose of the fee provision is to deter and punish the government for wrongfully withholding information. (*Aronson*, 866 F.2d at 5.) Moreover, those persons making the decision to refuse to release information will not be punished, since the fees will come out of public funds. *Aronson*, 866 F.2d at 5.

Second, the court in *Aronson* was unpersuaded by the argument that an attorney incurs legal costs to the extent the attorney is unable to devote time to his or her own practice. A nonlawyer *pro se* litigant in a FOIA case must also devote time to his or her case, and there is no reason to treat lawyers differently from other professionals "whose stock in trade is time and advice." 866 F.2d at 5.

Third, the court was of the opinion that allowing fees to a *pro se* lawyer would be to allow the lawyer to recover for a "non-performed service." 866 F.2d at 6.

Finally, the court thought it unseemly to treat *pro se* lawyers differently from *pro se* nonlawyers, since to allow the former but not the latter to recover fees creates the appearance that courts are "especially solicitous for the economic welfare of lawyers." 866 F.2d at 6.

The Fifth Circuit in *Cazalas* reached the opposite conclusion. First, the court addressed the argument that the policy of access to government records is not furthered by an award of fees since a *pro se* attorney will not have out-of-pocket legal expenses that will deter the attorney from pursuing a FOIA action. The court responded that the attorney in the case before it amply demonstrated the costs she incurred, both from other work forgone and in terms of personal energy. These were "precisely the sort of expenses that might deter a less determined litigant." *Cazalas*, 709 F.2d at 1056.

Second, the court in *Cazalas* found little evidence to support the argument that the fee provision's purpose is to ensure *objective* legal representation. Rather, according to the court, the legislative history supports the view that the fee provision is "designed to promote *vigorous advocacy* on behalf of citizens seeking government information." (Emphasis in original.) 709 F.2d at 1056, citing S. Rep. No. 854, 93d Cong., 2d Sess. 17-19 (1974).

Third, the court rejected the notion that granting fees to *pro se* lawyers will engender abusive fee generation. Where a FOIA request is legitimate, the government should promptly release the information and no fee will be necessary. On the other hand, where the government has a colorable basis for withholding documents, the plaintiff ordinarily will not be entitled to fees. 709 F.2d at 1056; see *Blue v. Bureau of Prisons* (5th Cir. 1978), 570 F.2d 529, 533 (one of the criteria for allowing

fees is whether the government had a reasonable basis in law for withholding requested records).

Fourth, the court cited several reasons for treating *pro se* lawyers differently from nonlawyer *pro se* litigants. Congress sought to encourage legal representation; thus, it makes sense to compensate lawyers for the legal work they perform when they represent themselves. In addition, it is relatively simple to measure the fees incurred where the *pro se* litigant is an attorney, for the work forgone is of the same nature as that actually performed. This is not the case for nonattorney *pro se* litigants. 709 F.2d at 1057.

Finally, the contrary view "fail[s] to come to terms with the fee provision's raison d'etre." (709 F.2d at 1057.) The court identified three policies served by the fee provision. First, it acts as an incentive for private individuals to pursue vigorously their requests for information by removing barriers, particularly the need for legal fees and legal expertise, that the government may erect in an effort to avoid complying with the law. This same incentive is necessary where an attorney seeking information utilizes his or her own skills. Second and third, the provision is designed to deter the government from opposing justifiable requests, and to punish the government where such opposition is unreasonable. 709 F.2d at 1057.

The appellate court in the case at bar reviewed the foregoing arguments. It then concluded, without analysis, that the reasoning of the *Cazalas* court was more cogent than that of the *Falcone* court. It added that it saw nothing in the fee provision of the Illinois FOIA which would render the *Cazalas* court's reasoning inapplicable to petitions for fees brought by *pro se* attorneys under that statute. (171 Ill. App. 3d at 900.) We disagree.

First, as we have explained, the legislative history of the Illinois fee provision shows that the purpose of the

provision is to ensure enforcement of the FOIA. This is accomplished by removing the burden of legal fees, which might deter litigants from pursuing legitimate FOIA actions. We do not think the provision was intended as either a reward for successful plaintiffs or as a punishment against the government. (See *Falcone*, 714 F.2d at 647.) A lawyer representing himself or herself simply does not incur legal fees. Thus legal fees do not present a barrier to a *pro se* lawyer seeking to obtain information.

Second, we think it is self-evident that one of the goals of the Illinois fee provision is to avoid unnecessary litigation by encouraging citizens to seek legal advice before filing suit. (See *Falcone*, 714 F.2d at 647.) We agree with the courts in *Aronson* and *Falcone* that the lack of objectivity that results from self-representation will not further this goal.

Finally, we think that the fear of abusive fee generation is not unreasonable. We do not suggest that plaintiff in the case at bar has engaged in such fee generation. Plaintiff attempted to avoid litigation for nearly a year, even though, under the terms of the statute, he could have brought suit much earlier. Moreover, there is no evidence that plaintiff, a member of a large Chicago law firm, has an inactive practice.

Nevertheless, we do not think it advisable to leave the door open for unscrupulous attorneys. We recognize that under section 11(h) of the statute, in order to be awarded fees, it must be shown that the plaintiff has substantially prevailed, that the records are of clearly significant interest to the general public, and that the public body lacked any rational basis in law for withholding the records. However, we do not think that these "safeguards" against fee generation, as plaintiff terms these provisions, address the potential problem directly. The most effective way to deter potential abusive fee

generation is to deny fees to lawyers representing themselves.

For these reasons, we hold that an attorney proceeding *pro se* in an action brought under the Illinois FOIA is not entitled to an award of fees under that statute. In light of this disposition, we need not address defendants' second contention concerning the attorney fees issue.

## CONCLUSION

For the foregoing reasons, we find that the appellate court did not err in concluding that plaintiff is entitled to the information requested by him which the trial court had declined to order defendants to disclose. On the attorney fees issue, we hold that plaintiff's status as an attorney proceeding *pro se* precludes him from recovering attorney fees. Therefore we need not address defendants' contention that the appellate court applied an incorrect standard of review to the question whether defendants had a rational basis in law for withholding the requested information.

The judgment of the appellate court is affirmed in part and reversed in part.

*Judgment affirmed in part;*
*reversed in part.*

CHIEF JUSTICE MORAN took no part in the consideration or decision of this case.